**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **FIRST MERUCURY** | § | **CIVIL ACTION NO.** |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **JUDGE** |
| | § | |
| **OIL MOP, LLC AND** | § | |
| **MAXUM INDUSTRIES, LLC** | § | |
| | § | |
| **Defendants.** | § | **MAGISTRATE** |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**DECLARATORY JUDGMENT**

TO THE HONORABLE COURT:

Plaintiff First Mercury Insurance Company ("First Mercury") brings these causes of action against Defendants Oil Mop, LLC and Maxum Industries, LLC and respectfully shows the following:

**I.**
**PARTIES**

1.      Plaintiff First Mercury Insurance Company is a corporation organized under the laws of the State of Illinois with its principal place of business in Michigan.

2.      Defendant Oil Mop, LLC ("Oil Mop") is a limited liability company organized under the laws of the State of Louisiana with its principal place of business in Louisiana. Defendant Oil Mop may be served through its registered agent for service of process, Richard B. Jurisich, Jr., 321 St. Charles Avenue, New Orleans, Louisiana.

3.      Defendant Maxum Industries, LLC ("Maxum") is a limited liability company organized under the laws of the State of Louisiana with its principal place of business in

Louisiana.  Defendant Maxum may be served through its registered agent of service of process, Broc J. Segura, 204 Mission Hills Drive, Broussard, Louisiana.

## II.
## JURISDICTION AND VENUE

4.     This court has subject matter jurisdiction over this lawsuit pursuant to Federal Rule of Civil Procedure 57 and the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

5.     In addition, this court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

6.     Venue is appropriate in this District and this Division because a substantial part of the events or omissions giving rise to this dispute occurred in this District and this Division.

## III.
## INTRODUCTION

7.     This lawsuit concerns the duty of First Mercury to defend and/or indemnify Defendants Oil Mop and Maxum for claims arising out of bodily injuries allegedly sustained by Maxum employees in June of 2010 while performing oil cleanup work related to the British Petroleum Deepwater Horizon disaster in the Gulf of Mexico.  These employees, Jose Jesus Sanchez, Alberto Alvarez, Tito Alvarez, Jr. and Pedro Alvarez Perez ("Maxum Employees") filed suit against Oil Mop, Maxum and others in the lawsuit styled *Jose Jesus Sanchez et al. v. Maxum Industries, LLC, et al.*, Cause No. 2011-4244, 357th Judicial District, Cameron County, State of Texas ("the *Sanchez* Lawsuit").  Oil Mop filed suit against Maxum in the 16th Judicial District Court, Parish of Iberia, State of Louisiana ("the *Oil Mop* Lawsuit") seeking a contractual defense and indemnity from Maxum in connection with the *Sanchez* Lawsuit.

## IV.
## <u>FACTUAL BACKGROUND</u>

8.      On May 24, 2010, Oil Mop and Maxum entered into subcontractor agreement SUB1051000199 whereby Maxum agreed to provide material, equipment and labor necessary to provide, among other things, emergency response, assessment, clean-up and disposal services to Oil Mop.

9.      In the *Sanchez* Lawsuit, Jose Jesus Sanchez, Alberto Alvarez, Tito Alvarez, Jr. and Pedro Alvarez Perez allege they were hired by Maxum and sent to Louisiana in June of 2010 to perform oil cleanup work related to the British Petroleum Deepwater Horizon disaster for Oil Mop pursuant to the subcontractor agreement.

10.     After working for "more than a month" without being provided any warning or instructions about the chemical agent they were exposed to or being provided any personal protective gear or respirators, the *Sanchez* plaintiffs contend they began to feel ill and subsequently suffered severe injuries.

11.     In the *Oil Mop* Lawsuit, Oil Mop sued Maxum for contractual defense and indemnity in connection with the claims made against it in the *Sanchez* Lawsuit.

12.     First Mercury issued Policy No. FMTX007650 ("the First Mercury Policy") to Maxum.  The First Mercury Policy incepted on July 7, 2010 and expired on July 7, 2011.  The First Mercury Policy is a commercial general liability policy.  Claims against Maxum that are covered under the Commercial General Liability Coverage Part are subject to a $10,000 "per occurrence" deductible.

**V.**

<u>**RELEVANT PROVISIONS OF THE FIRST MERCURY POLICY**</u>

13.     The Insuring Agreement to the Commercial General Liability Coverage Part states in relevant part as follows:

**SECTION I – INSURING AGREEMENTS**

**1.      Insuring Agreement A – Bodily Injury and Property Damage**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and the duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in Section III—Limits of Insurance and;

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverages A or B or medical expenses under Coverage C.

* * *

14.     The Insuring Agreement contains several potentially relevant exclusions, including an exclusion for contractual liability:

This insurance does not apply to:

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

      (1)     That the insured would have in the absence of the contract or agreement; or

      (2)     Assuming in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

           (a)     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

           (b)     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

15.     The Insuring Agreement contains several potentially relevant definitions, including:

      3.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

                         \* \* \*

      5.     "Employee" included a "leased worker".  "Employee" does not include a "temporary worker".

                         \* \* \*

      9.     "Insured contract" means:

           f.     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

                         \* \* \*

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16.     The First Mercury Policy has been amended by the **Continuous or Progressive Injury and Damage Exclusion** (CVX-GLO5066 (05/2004)), which states in relevant part as follows:

This insurance does not apply to any damages because of or related to bodily injury or property damage:

1.      which first existed, or alleged to have first existed, prior to the inception date of this policy, or

2.      which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged bodily injury or property damage continues during this policy period.

3.      which were caused, or are alleged to have been caused, by the same condition or construction defect which resulted in bodily injury or property damage which first existed prior to the inception date of this policy.

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages, arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

17.     The First Mercury Policy has also been amended by the **Sudden and Accidental Pollution Endorsement** (CVX-GL-5025 (02/2004), which states in relevant part as follows:

Exclusion f. under paragraph 2. Exclusions, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages) is replaced by the following:

This insurance does not apply to:

f.(1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2)     Any loss, cost or expense arising out of any:

(a)    Request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any other way respond to, or assess the effects of pollutants, or

(b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, assessing the effects of pollutants.

(3)    Part (1) of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured.

This applies only when such premises, site or location has never at any time been used by anyone for the handling, storage, disposal, processing or treatment of waste.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(4)    This exclusion does not apply to "bodily injury" or "property damage" caused by an unexpected or unintentional discharge, dispersal, seepage, migration, release or escape of pollutants provided such discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)    was accidental and was neither expected nor intended from the standpoint of the insured;

(b)    can be identified as commencing at a specific time and date during the policy period listed on the Declaration Page;

(c)    became known to the Insured within seventy-two (72) hours after discharge, dispersal, seepage, migration, release or escape;

(d)    is reported to us within ninety (90) days of being detected;

(e)    did not result from the Insured's intentional or willful violation of any governmental statute, rule or regulation.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

18.    The First Mercury Policy has also been amended by Endorsement #5, which states in relevant part as follows:

This insurance does not apply to:

Hazardous Materials

(1)     "Bodily injury" to any "employee" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, ingestion, inhalation, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

(2)     Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraph (1) above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

* * *

"Hazardous materials" means "pollutants," and materials that are radioactive, corrosive, oxidizers, asphyxiates, biohazardous, toxic, pathogen or allergen substances and organisms, lead, asbestos, silica and materials containing them.

## VI.
## COUNT I – DECLARTORY RELIEF-DUTY TO DEFEND OR INDEMNIFY MAXUM

19.     Plaintiff First Mercury incorporates Paragraphs 1-18 as if pled in full here.

20.     First Mercury seeks a declaration that that it has no duty to defend or indemnify Maxum in connection with the claims made against it in the *Sanchez* Lawsuit or the *Oil Mop* Lawsuit.  The *Sanchez* plaintiffs allege exposure to toxins beginning in June of 2010. The First Mercury Policy did not become effective until July 7, 2010 and specifically excludes coverage for bodily injuries which are alleged to have been in the process of taking place prior to the inception date of the policy, even if the actual or alleged bodily injury continues during the policy period.  Coverage is similarly excluded for bodily injuries which were caused or which are alleged to have been caused by the same condition which resulted in bodily injury which first existed prior to the inception date of the policy.

21.     The First Mercury Policy excludes coverage for "bodily injury" arising out of the "alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time."  The Sanchez plaintiffs allege exposure to "harmful chemical agents" that qualify as "pollutants" as defined by the First Mercury Policy.

22.     The First Mercury Policy excludes coverage for "bodily injury" to any "employee" which would not have occurred but for the actual, alleged or threatened discharge, ingestion, inhalation, dispersal, seepage, migration, release or escape of "hazardous materials". The Sanchez plaintiffs allege that while employed by Maxum, they were exposed to "harmful chemical agents" that qualify as "hazardous materials" as defined by the First Mercury Policy.

### VI.
### COUNT II – DECLARTORY RELIEF-DUTY TO DEFEND OR INDEMNIFY OIL MOP

23.     Plaintiff First Mercury incorporates Paragraphs 1-22 as if pled in full here.

24.     The indemnity agreement in subcontractor agreement SUB1051000199 whereby Maxum agreed to indemnify Oil Mop is unenforceable under the Louisiana Oilfield Anti-Indemnity Act, La. R.S. 9:2780.  Accordingly, Oil Mop does not qualify as an additional insured under the First Mercury policy and First Mercury provides no coverage to Oil Mop for the claims made against it in the *Sanchez* Lawsuit.

25.     In the alternative and assuming Oil Mop qualifies as an additional insured under the First Mercury Policy, which is denied, coverage would be excluded for the claims made against Oil Mop in the *Sanchez* Lawsuit.  The *Sanchez* plaintiffs allege exposure to toxins beginning in June of 2010.  The First Mercury Policy did not become effective until July 7, 2010 and specifically excludes coverage for bodily injuries which are alleged to have been in the process of taking place prior to the inception date of the policy, even if the actual or alleged bodily injury continues during the policy period.  Coverage is similarly excluded for bodily

injuries which were caused or which are alleged to have been caused by the same condition which resulted in bodily injury which first existed prior to the inception date of the policy.

26.     The First Mercury Policy excludes coverage for "bodily injury" arising out of the "alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time."  The Sanchez plaintiffs allege exposure to "harmful chemical agents" that qualify as "pollutants" as defined by the First Mercury Policy.

## VII
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff First Mercury Insurance Company prays that the Court:

1.     Issue a declaration that First Mercury Insurance Company has no duty to defend or indemnify Maxum against the claims made in the *Sanchez* Lawsuit or the *Oil Mop* Lawsuit;

2.     Issue a declaration that First Mercury Insurance Company has no duty to defend or indemnify Oil Mop against the claims made in the *Sanchez* Lawsuit;

3.     Award Plaintiff all other relief to which it may be entitled, including, but not limited to its attorney fees, costs, and expenses.


Respectfully submitted:



*/s/ Glen E. Mercer*
By: Glen E. Mercer (#21752), T.A.
Kourtney T. French (#26736)
SALLEY HITE MERCER & RESOR, LLC
365 Canal Street, Suite 1710
New Orleans, Louisiana  70130
Tel:  (504) 566-8800
Facsimile:  (504) 566-8828

**ATTORNEYS FOR FIRST MERCURY
INSURANCE COMPANY**